IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | CASE NO. 4:21-CR-00456-1 |
| | § | HOUSTON, TEXAS |
| VERSUS | § | FRIDAY, |
| | § | OCTOBER 22, 2021 |
| DANIEL PRINCE | § | 10:17 A.M. TO 10:31 A.M. |

DETENTION HEARING (VIA ZOOM)

BEFORE THE HONORABLE SAM S. SHELDON
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:                          SEE NEXT PAGE

ELECTRONIC RECORDING OFFICER:    RACHEL WILLBORG

COURTROOM CLERK:                 SHANNON JONES

TRANSCRIPTION SERVICE BY:

JUDICIAL TRANSCRIBERS OF TEXAS, LLC
935 Eldridge Road, #144
Sugar Land, TX 77478
281-277-5325
mary@judicialtranscribers.com

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

APPEARANCES (VIA ZOOM):


FOR THE PLAINTIFF:              JAMES DONALD MCALISTER
                               U.S. ATTORNEY'S OFFICE
                               100 LOUSIANA STREET
                               SUITE 2300
                               HOUTON, TX 77002
                               713-567-9573


FOR THE DEFENDANT:             ANDREW J WILLIAMS
                               ATTORNEY AT LAW
                               1521 GREEN OAK PLACE
                               SUITE 140
                               KINGWOOD, TX 77339
                               281-358-9111

INDEX

| WITNESS: | Direct | Cross | Redirect | Recross |
|---|---|---|---|---|
| NICHOLAS ANTHONY WILLIAMS | | | | |
| By Mr. Williams | 6 | . | . | . |
| By Mr. McAlister | . | 10 | . | . |

| EXHIBITS: | Received |
|---|---|
| Exhibits 1 and 2 | 6 |

***

4

**HOUSTON, TEXAS; FRIDAY, OCTOBER 22, 2021; 10:17 A.M.**

THE COURT:  Okay.  So, we'll do the next case.
Daniel Prince, 21-456.

Good morning, sir.

Are you Mr. Prince?

DEFENDANT PRINCE:  Good morning.

THE COURT:  Can you hear us?

DEFENDANT PRINCE:  Yes.

Good morning to you as well.

THE COURT:  Okay, are you Mr. --

DEFENDANT PRINCE:  Yes.

THE COURT:  Okay, and you're here with your
attorney, Mr. Williams, and Mr. McAllister's here on behalf
of the Government.  We're here for your Detention Hearing.

Mr. Prince, normally, we would do this all in a
courtroom.  Because of the pandemic, it's not safe for all
of us to be in the courtroom.

Do we have your permission to do this hearing by
video?

DEFENDANT PRINCE:  Absolutely.

THE COURT:  Okay.  So, Mr. Williams, what we'll do
is Mr. McAlister's going to put on a witness.  We'll
introduce the Summary of Facts as Exhibit 1 and the Pretrial
Report as Exhibit 2, and then I will let you cross-examine
the Agent.

Again, as we discussed before, because a grand jury has already found probable cause, we're not going to get too far into the facts as part of this proceeding today.

So, who's the Agent that we're going to call?

MR. MCALISTER:  Agent Williams, Your Honor.

THE COURT:  Okay, Agent Williams.

(Noise on video call.)

THE COURT:  Come forward, Agent Williams.

MR. MCALISTER:  Stand right there and be sworn.

(Witness sworn.)

MR. MCALISTER:  Your Honor, may he remove his mask?

THE COURT:  Yeah.

Okay.  Good morning, sir.

Can you state your name for the Record?

THE WITNESS:  Nicholas Anthony Williams.

THE COURT:  And who are you currently employed by?

THE WITNESS:  The Federal Bureau of Investigations.

THE COURT:  Okay.  So, make sure you -- and what's your position?

THE WITNESS:  Special Agent.

THE COURT:  And how long have you been a Special Agent?

THE WITNESS:  Just over two years, Your Honor.

THE COURT:  And I'm looking at a document called "Summary of Facts," it's a three-page document.

Have you reviewed this document?

THE WITNESS:  I have, Your Honor.

THE COURT:  And is everything in this document true and correct to the best of your knowledge?

THE WITNESS:  Yes, Your Honor.

THE COURT:  So, I'll mark and admit Summary of Facts as Exhibit 1, and then the Pretrial Report, I will mark as Government's Exhibit 2.

(Exhibits 1 and 2 received in evidence.)

THE COURT:  Go ahead, Mr. Williams, Attorney Williams.

MR. WILLIAMS:  Okay, all right.  Thank you.

DIRECT EXAMINATION OF NICHOLAS ANTHONY WILLIAMS
BY MR. WILLIAMS:

Q.   Agent Williams, were you the main Agent on this case?

A.   I was not.

Q.   Okay, were there other Agents that actually did the investigation on this case, and you're using the reports from them?

A.   Yes, that's correct.

Q.   Okay.  In regards to the incident, were there witnesses that made a positive identification of my client, Mr. Prince?

A.    Are we speaking of the arrest or in the Indictment regarding the incident on 2018, or is this --

Q.    I'm talking about December 8th, 2018, the shooting.

A.    Okay, and can you please state your question again? I'm sorry.

Q.    Okay, are there witnesses to this shooting that positively identified Mr. Prince as being there?

A.    I'm unaware of any witnesses, sir.

Q.    Okay, and I understand that there are witnesses in this case that are not going to be divulged, at this time, their names.

      So, as far as you know, no witnesses at the shooting, correct?

A.    As far as I know, sir.

Q.    Okay, and did you find any, like any weapons at the scene there where the shooting took place?

A.    On the night of the arrest, sir, or again, going back to the Indictment regarding December 2018?

Q.    Regarding the Indictment of December 2018, regarding the shooting.

A.    I'm not aware of any weapons found, sir, but there were shell casings found.

Q.    Okay, were there any fingerprints or anything like that with the shell cases indicating my client was there at the scene of the shooting?

A.   I'm not aware of any fingerprints, sir.

Q.   Okay.  With regards to the Indictment as a whole, with the other two allegations, the other two counts between December 1st and December 8th of 2018 of possessing the drugs and distributing them, are there witnesses to that that actually saw Mr. Prince deliver any drugs to anyone?

A.   It's understood there are witnesses, sir, but I'm not familiar with who or any details of that event.

Q.   Okay.  So, at this time, you don't have any evidence that Mr. Prince was even involved in any kind of drug activity; is that correct?

A.   No, sir, I'm not able to speak on that incident, as well, sir.

Q.   Okay --

        THE COURT:  Wait.  So, I don't want -- Wait.  So, Mr. Williams, hold on, the attorney.  He's saying that he personally doesn't know, right?  That's the way I understand it.

        There could be evidence but you, personally, don't know?

        THE WITNESS:  That's correct, that's correct.

        THE COURT:  Okay.

BY MR. WILLIAMS:

Q.   Okay.  So, for today's purposes, you don't have any evidence that Mr. Prince was at the scene of the shooting,

NICHOLAS ANTHONY WILLIAMS - DIRECT BY MR. WILLIAMS            9

correct?

A.    No.

Q.    And as far as you know, today, you don't have any evidence that Mr. Prince delivered any drugs to anyone at any time between December 1st and December 8th, 2018?

A.    No, I do not.

Q.    Okay, and when you arrested Mr. Prince, did he make any statements to you to say that "I was there, I did it," anything that inculpates him?

A.    No.  No, sir.

Q.    Okay, did he make any statements at all?

A.    No, not to me, sir.

Q.    Okay, did he resist arrest at all?

A.    No, he did not.

Q.    Did he basically cooperate -- I'm sorry -- cooperate with you when you made the arrest?

A.    Yes, he did.

Q.    Okay, and was there anyone else with him when you made the arrest?

A.    At the time of the arrest, there was not anybody else with him.

Q.    Okay, other than what's in the report, which is kind of vague, is there any other evidence to connect Mr. Prince with any of these crimes in the Indictment, any of the four counts or so in the Indictment that you're aware of right

now?

A.    No, sir, there were three weapons found in the hotel room on the night of the arrest, but as far as speaking to the connection, no, sir.

Q.    Okay, and you're talking about the hotel room where Mr. Prince was; is that correct?

A.    That's correct.

Q.    Okay, was there anyone else -- I forgot what you said. Was there anyone else in the hotel room when you arrested him?

A.    At the time of the arrest, no, sir.

Q.    Okay.  Did you all do a search of his cell phone?  Have you done that yet, or is that still pending?

A.    I would assume that's still pending, sir.  I'm not conducting the investigation for anything regarding that. So, I can't speak on that.

        MR. WILLIAMS:  Okay, all right.  I'll pass the witness, Judge.

        THE COURT:  Okay.  Mr. McAlister?

        MR. MCALISTER:  I do have quite a bit of follow-up, Your Honor.

        THE COURT:  Okay, go ahead.

   CROSS-EXAMINATION OF NICHOLAS ANTHONY WILLIAMS
BY MR. MCALISTER:

Q.    Agent Williams, you were not the Case Agent on this,

but you are aware that a grand jury made a finding of probable cause as to these offenses on September 14th of 2021, correct?

A.    Yes.

Q.    Okay, and though you -- as you were asked by the Defense whether or not had things in your possession, I'm going to ask you now whether you are aware of some things, okay?

A.    Okay, yes.  Okay.

Q.    Were you aware that there was a witness who saw Mr. Prince, Mr. Dawson, and Mr. Marshall, and Mr. Randolph go into a warehouse in which a shooting took place?

A.    Yes, I was aware of that.

Q.    Okay, but -- and I'm not asking you to disclose the name of the witness -- are you also aware that there was a witness who knew about the planning and preparation for this offense?

A.    Yes, I was aware of that.

Q.    And that witness implicated Mr. Prince?

A.    Yes.

Q.    In addition to that, are you aware that a deep dive was done into the various phones, cell phones used by Mr. Prince, Mr. Dawson, Mr. Marshall, Mr. Randolph, and Mr. Hubbard?

A.    Yes, I was.

Q.   Okay, and is it fair to say that those phone numbers, and specifically, one for Mr. Prince, was tied to that person?  So, a cell phone and phone number were actually tied to Mr. Prince; do you know that?

A.   Yes, that's correct.

Q.   Okay, and that phone number was placed at the murder scene on the date and time of the murder, and the phone was found communicating with the co-Defendants in that location?

A.   Yes, that's correct.

Q.   Okay.  So, that would be the corroboration for the witnesses that saw what they claimed to see?

A.   Correct.

Q.   All right, let me just then --

        MR. MCALISTER:  Your Honor, I'm not going to go into the criminal history that we've talked about because that's in the report.

        THE COURT:  Okay, okay.

        MR. MCALISTER:  But I would like to talk about the nature of Mr. Prince's arrest.

BY MR. MCALISTER:

Q.   You were on the arrest team, correct?

A.   That's correct.

Q.   Were there any efforts to find Mr. Prince at the addresses that were known to law enforcement, at the time?

A.   Yes, there was.

Q.   Okay, and were we able to find him at those addresses?

A.   No, we were not.

Q.   Ultimately, he was found in a motel; is that correct?

A.   That's correct.

Q.   And that's a week after there was a press release indicating that there was a warrant out for him?

A.   Yes, that's correct.

Q.   Okay, was that motel room in his name or in his credit card that you're aware of?

A.   No, I was not aware of the hotel room being in his name.

Q.   Okay, when they did arrest him -- he is a convicted felon -- were there any weapons found in that motel room, and it's just a single room motel room?

A.   Yes, there was.

Q.   How many weapons were found in that room?

A.   Three weapons.

Q.   So, if Mr. Prince indicated to the Pretrial Officer that he didn't have any weapons, that would not be true?

A.   That would not be true.

        MR. MCALISTER:  I pass the witness, Your Honor.

        THE COURT:  Okay.

        So, before you --

        MR. WILLIAMS:  I don't have anything further, Judge.

THE COURT:  Okay.

So, any just, Mr. Williams, the attorney -- you can sit down.  You're good.

(Witness steps down.)

THE COURT:  I'm not, you know, my decisions not based on the weight of the evidence because I understand limited evidence has been presented, but go ahead and, Attorney Williams, proffer what you want to proffer now understanding that's a rebuttable presumption case and the burden's on you.  So, go ahead and proffer.

MR. WILLIAMS:  Understood, Judge.

Yesterday, I talked to his mother, Sandra Prince. And if called as a witness, Ms. Prince would say that Mr. Prince, Daniel Prince could live with her and she would make sure that he went to all of his meetings, his court appointments, and showed up to court when he's supposed to. As far as I know, she doesn't have any felony convictions or anything and she can also put up some money towards a bond. And of course, this is his mother.

And the second witness that I spoke to was Janae Roy who is the mother of his 7-year-old son.  Janae said the same thing, that he could live there, he could continue working with that business he has called "Lush Lashes."  And he could live there with her and take care of his son.  And according to her, he's always been there, he's always been

there with his son, and taken care of him and, you know, provided for him.  And she would also be able to put up some money towards a reasonable bond.

So, those are the two witnesses that I would proffer, Judge.

THE COURT:  Okay.

MR. WILLIAMS:  That's all I have.

THE COURT:  Thank you.

So, Mr. Prince, you understand that a grand jury has returned the case.  That just means there's probable cause.  You didn't get to put on a defense.  A trial's going to be different.  The Government has to put on their witnesses and your attorney will get to do discovery, and the burden will be on the Government to prove its case beyond a reasonable doubt, but this is still the most serious of a federal case that you could have and a grand jury has found probable cause that you were involved in a murder and that based on the charges, if convicted, you face a mandatory minimum sentence of 30 years.

As far as the rebuttal of presumption, Mr. Williams, I just don't believe that you've met it on is there conditions regarding the safety of the community considering his criminal history and then when he was on a term of supervised release before and the violations of that.  And then, the criminal history that was most

concerning was being in felon-in-possession, and here, in this case, he's found with three guns in a motel room.  So, based on that, I don't believe that the presumption's been rebutted.  As I've told the other lawyers before, as discovery goes, if you think that because I'm not making a finding on the strength of the case, if that somehow the case is weak in the future, that you can bring another motion if new things come to light, but so my decision is today that he'll be remanded in custody until further proceedings of the case.

Any questions, Attorney Williams?

MR. WILLIAMS:  No, Your Honor.

THE COURT:  Anything else, Mr. McAlister?

MR. MCALISTER:  Just to arraign the Defendant, Your Honor.

THE COURT:  Okay, I think we did the Arraignment. We did it, yeah.

MR. MCALISTER:  Was it done at the initial?

THE COURT:  Yeah, we did it at the initial.

MR. MCALISTER:  All right.

Thank you, Your Honor.  I have nothing else.

THE COURT:  Thanks, okay.

Good luck, sir.

Thank you, Mr. Williams.

MR. WILLIAMS:  Thank you, Your Honor.

May I be excused?

THE COURT:  Yes, thank you.

MR. WILLIAMS:  Thank you.

(Proceedings adjourned at 10:31 a.m.)

*  *  *  *  *

*I certify that the foregoing is a correct transcript to the best of my ability due to the condition of the electronic sound recording of the ZOOM/video/telephonic proceedings in the above-entitled matter.*

*/S/ MARY D. HENRY*

*CERTIFIED BY THE AMERICAN ASSOCIATION OF*

*ELECTRONIC REPORTERS AND TRANSCRIBERS, CET\*\*337*

*JUDICIAL TRANSCRIBERS OF TEXAS, LLC*

*JTT TRANSCRIPT #65638*

*DATE FILED:  APRIL 19, 2022*